IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


GABRIEL BENNETT and TIFFANY
BENNETT,

        Plaintiffs,


v.                          //    CIVIL ACTION NO. 1:14CV129
                                    (Judge Keeley)


SKYLINE CORPORATION, BOB'S
QUALITY HOMES, INC., and
BELPRE SAVINGS BANK,

        Defendants.


MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

        Pending before the Court is the motion to dismiss (dkt. no.
10) filed by defendant Skyline Corporation ("Skyline").   For the
following reasons, the Court **DENIES** in part Skyline's motion to
dismiss as to Counts One, Two, Three, Four, Six, Eight, and Nine;
**GRANTS** in part Skyline's motion to dismiss as to Count Six insofar
as it purports to state a stand alone claim for breach of the duty
of good faith, and as to Counts Five, Seven, Ten, Eleven, and
Twelve, and dismisses those counts without prejudice; and **GRANTS**
the Bennetts' motion for leave to amend Counts Three and Four.

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

## I) BACKGROUND

### A)    Factual Background

Skyline is an Indiana corporation that manufactures home components.   Home builders such as co-defendant Bob's Quality Homes, Inc. ("Bob's Quality Homes") purchase manufactured home components from Skyline, and then build a home from those components for purchasers.   Skyline provides an express warranty guaranteeing that its manufactured home components are free from manufacturing defects.

Plaintiffs Gabriel and Tiffany Bennett ("the Bennetts") purchased a new home from Bob's Quality Homes on April 18, 2013. Bob's Quality Homes represented itself to the Bennetts as an authorized Skyline dealer/agent.   The Bennetts entered into a loan agreement with co-defendant Belpre Savings Bank ("Belpre") to pay for the new home.

When the Bennetts purchased their new home, they informed Bob's Quality Homes that they needed the home to be delivered and ready for occupancy by a certain date.   Although Bob's Quality Homes guaranteed the Bennetts that the home would be delivered and installed within the desired time frame, it did not complete the installation process on time.   When the home installation began to

<u>MEMORANDUM OPINION AND ORDER</u>
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

go awry, the Bennetts instructed Belpre to refrain from disbursing loan funds to Bob's Quality Homes. Despite the Bennetts' instructions, Belpre disbursed the loan funds.

In addition, Bob's Quality Homes allegedly damaged and failed to properly install the home. When the Bennetts were finally able to occupy their new home, they found nonconformities stemming from the manufacture, delivery, and installation of the home that substantially impaired their enjoyment of their new home.

At that point, the Bennetts contacted Bob's Quality Homes and Skyline to request that they undertake repairs pursuant to any applicable warranties. Bob's Quality Homes and Skyline, however, failed to repair the home in a timely fashion. The Bennetts notified Bob's Quality Homes, Skyline, and Belpre of their rejection and/or revocation of acceptance of the home.

**B)    Procedural Background**

The Bennetts filed suit in the Circuit Court of Calhoun County, West Virginia, on June 26, 2014. (Dkt. No. 1 at 1). The Bennetts' complaint included twelve claims:

- **Claim One:** Cancellation of Contract by Rejection

- **Claim Two:** Cancellation of Contract by Revocation of Acceptance

- **Claim Three:**  Breach of Express Warranties

- **Claim Four:** Breach of Implied Warranty of Merchantability

- **Claim Five:** Breach of Implied Warranty of Fitness

- **Claim Six:** Breach of Contract and Duty of Good Faith

- **Claim Seven:** Unconscionability

- **Claim Eight:** Common Law Negligence

- **Claim Nine:** Unfair or Deceptive Acts or Practices

- **Claim Ten:** Common Law Fraud or Misrepresentation

- **Claim Eleven:** Civil Conspiracy

- **Claim Twelve:** Joint Venture

(Dkt. No. 1-2 at 6-14).

Skyline filed a notice of removal on August 5, 2014.  (Dkt. No. 1).  In its notice of removal, Skyline alleged that this Court has original jurisdiction under 28 U.S.C. § 1332(a) based on diversity of citizenship. (Dkt. No. 1 at 2).  The Bennetts are citizens of West Virginia and reside in Calhoun County, West Virginia.  Bob's Quality Homes is an Ohio corporation with its principal place of business in Ohio; Belpre is an Ohio corporation with its principal place of business in Ohio; and Skyline is an Indiana corporation with its principal place of business in

4

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]**

Indiana.  <u>Id.</u>  The price of the modular home components used to construct the Bennetts' home, standing alone, exceeds the jurisdictional threshold of $ 75,000.00.  <u>Id.</u> at 3.  Co-defendants Belpre and Bob's Quality Homes consented to removal. (Dkt. No. 1-1 at 1-2).

On September 10, 2014, Skyline filed a motion to dismiss the Bennetts' complaint for failure to state a claim upon which relief can be granted.  Specifically, it argues that the Bennetts failed "to plead fraud with specificity," failed "to satisfy the statutory prerequisite to the filing of their West Virginia Consumer Credit and Protection Act claim," failed to allege a recognized cause of action for the breach of the duty of good faith and fair dealing, and failed to state "facts sufficient to state a claim upon which relief can be granted." (Dkt. No. 10 at 1, Dkt. No. 11 at 2).

On September 24, 2014, the Bennetts filed a response opposing Skyline's motion to dismiss, or in the alternative, seeking leave to amend any deficiencies in their complaint. (Dkt. No. 17).  On October 1, 2014, Skyline filed a reply brief. (Dkt. No. 19).  The parties have had the opportunity of full briefing, and the motions are ripe for review.

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

## II) LEGAL STANDARDS

### A) Motion to Dismiss

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). However, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

662, 678 (2009).  This requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.

**B)    Motion to Amend the Complaint**

The Bennetts seek leave to amend their complaint if it is deficient.  (Dkt. No. 17 at 1).  A plaintiff can amend a pleading one time, as a matter of course, before the defendant files a responsive pleading.  Fed. R. Civ. Pro. 15(a).  After a responsive pleading is filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2).  The Fourth Circuit has interpreted 15(a) to require that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile."  Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962)).

A court should deny leave to amend on the ground of futility only "when the proposed amendment is clearly insufficient or frivolous on its face."  Johnson, 785 F.2d at 510.  Conjecture about the underlying merits of the litigation should not enter into

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT**
**SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]**

the court's decision as to whether to allow an amendment. <u>Davis v.</u>
<u>Piper Aircraft</u>, 615 F.2d 606, 613-14 (4th Cir. 1980).

### III) ANALYSIS

**A)    Count One: Cancellation of Contract by Rejection**

In Count One of the complaint, the Bennetts seek cancellation
of contract by rejection. (Dkt. No. 1-2 at 6). West Virginia's
version of the Uniform Commercial Code ("UCC") provides that
"[r]ejection of goods must be within a reasonable time after their
delivery or tender. It is ineffective unless the buyer seasonably
notifies the seller." W. Va. Code § 46-2-602(1). <u>See</u> <u>Shreve v.</u>
<u>Casto Trailer Sales, Inc.</u>, 149 S.E.2d 669, 242 (W. Va. 1966)
(noting a cause of action for rescission or cancellation of
contract under the Uniform Commercial Code in West Virginia).

Reasonableness is defined under the UCC as dependent on "the
nature, purpose, and circumstances of the action." W. Va. Code §
46-1-205(a). The Supreme Court of Appeals of West Virginia has
held that whether a party gave notice of rejection within a
reasonable time is a question of fact for the jury to decide. <u>City</u>
<u>Nat. Bank of Charleston v. Wells</u>, 384 S.E.2d 374, 381 (1989).

Skyline does not argue that the Bennetts' rejection was
unreasonable, but instead alleges that, contrary to the allegations

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

in the complaint, the Bennetts did not reject delivery of their home at all. (Dkt. No. 11 at 3). Skyline points out that the complaint identifies neither the date nor the manner of rejection. Id.

However, at the motion to dismiss stage, the sole inquiry is whether a plaintiff has pleaded sufficient facts to allege a plausible claim for relief. Here, the Bennetts did so. In their complaint, they state that they "notified Defendants of [their] rejection...of the subject home." (Dkt. No. 1-2 at 5). The Court must accept factual allegations in the complaint as true for purposes of a motion to dismiss. Anderson, 508 F.3d at 188. The Bennetts did not state the time or manner of rejection, but they were not required to do so; the statute merely requires rejection within a reasonable time, which is a question of fact for the jury. According to the plain language of the complaint, the Bennetts notified Skyline of their rejection after they afforded Skyline and Bob's Quality Homes an opportunity to repair the home. Id.

Skyline also alleges in its motion to dismiss that the Bennetts still live in their home; it notes that they have not alleged they ever vacated their home. Id. Skyline points to W. Va. Code § 46-2-602(2)(a), which provides that "after rejection any

exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller."

Skyline's allegations about the Bennetts' exercise of ownership over the home <u>after</u> rejection deal with a factual dispute that is not appropriate for resolution at the motion to dismiss stage. Section 46-2-602(2) describes the "normal duties of the buyer upon rejection," not whether the buyer has given proper notice of rejection in the first place. <u>See</u> Commentary, W. Va. Code Ann. § 46-2-602(2).

The Bennetts are not required to include in their complaint whether they continued to reside in the home after rejection, and to consider the matter at this stage would expand the scope of the Court's review beyond the complaint. <u>See</u> Fed. R. Civ. Pro. 12(d) (providing that the Court must treat a 12(b)(6) motion as a motion for summary judgment if it considers matters outside the pleadings). The Bennetts have pleaded sufficient facts to support a claim for cancellation of contract by rejection. Therefore, the Court denies Skyline's motion to dismiss Count One.

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

**B)  Count  Two:  Cancellation  of  Contract  by  Revocation  of Acceptance**

The Bennetts seek cancellation of contract by revocation of acceptance as an alternative to cancellation of contract by rejection.  (Dkt. No. 1-2 at 6).

Under W. Va. Code § 46-2-608(1), a buyer can revoke his acceptance of goods "whose nonconformity substantially impairs its value to him" under certain circumstances.  The buyer must have accepted the goods either "on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured," or "without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."  W. Va. Code § 46-2-608(1)(a)-(b).

In addition, the buyer must revoke his acceptance "within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects."  W. Va. Code § 46-2-608(2).  The buyer's revocation is not effective until he notifies the seller.  Id.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT**
**SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]**

Skyline argues that the Bennetts never allege when, where, and how the notice of revocation was communicated to Skyline, and also fail to allege that Skyline caused the nonconformities in their home. (Dkt. No. 11 at 4). Rather, the Bennetts allege that Skyline failed to fix the nonconformities caused by Bob's Quality Homes. <u>Id.</u>

As a preliminary matter, Skyline's claim that the Bennetts did not notify Skyline of their revocation of acceptance fails for the same reason Skyline's argument about rejection of acceptance fails. In the complaint, the Bennetts alleged that they "notified Defendants of [their] rejection and/or revocation of acceptance of the subject home." (Dkt No. 1-2 at 5). The Court must take the facts pleaded in the complaint as true when reviewing the sufficiency of the complaint. <u>Anderson</u>, 508 F.3d at 188.

Skyline's argument that the Bennetts failed to allege that it is responsible for the nonconformities leading to their revocation of acceptance also fails. The Bennetts alleged that Bob's Quality Homes "damaged the subject home and failed to properly install the home as required by [Skyline's] installation instructions and by law." (Dkt. No. 1-2 at 13). However, the Bennetts also alleged that Bob's Quality Homes is "an authorized Skyline dealer

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

and/or...agent." <u>Id.</u> at 2.  Skyline undertook repairs on the home after the installation, but they "failed and/or refused to repair the home in a timely manner... ," following which, the Bennetts revoked their acceptance of the home.  <u>Id.</u> at 5.

Taken together, the facts that the Bennetts' home was damaged, due to either installation or manufacturing problems; that Bob's Quality Homes is an agent of Skyline; and that Skyline failed to repair the home in accordance with their warranty allow the Court to infer that a nonconformity existed that substantially impaired the value of the home to the Bennetts, and that Skyline was one of the parties responsible for the nonconformities.  Therefore, the Court denies Skyline's motion to dismiss Count Two.

**C)  Count Three: Breach of Express Warranties**

The Bennetts allege that, before they purchased their home, both Bob's Quality Homes and Skyline "expressly warranted that the subject home was free from defects and had not been damaged." (Dkt. No. 1-2 at 16).  The Bennetts also claim that both Bob's Quality Homes and Skyline "made additional 'warranties' as that term is defined by W. Va. Code § 46A-6-102(8)." <u>Id.</u> at 17.

W. Va. Code § 46-2-313 provides that express warranties by the seller are created, in relevant part, by "[a]ny affirmation of fact

13

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain...."  W. Va. Code § 46-2-313(1)(a).  A cause of action for breach of warranty generally accrues "when tender of delivery is made."  W. Va. Code § 46-2-724(2).

The Bennetts included a claim for breach of express warranty in their complaint, but they failed to include the terms of the warranty.  Skyline, however, included a copy of the warranty in its motion to dismiss.  (Dkt. No. 11 at 5).  Although the Court will not generally consider evidence outside the pleadings at the motion to dismiss stage, it may do so if "it was integral to and explicitly relied on in the complaint," and if the plaintiffs do not challenge its authenticity.  Phillips v. LCI Intern., Inc., 190 F.3d 609, 618 (4th Cir. 1999).  Here, the Court will consider the warranty.

The express warranty Skyline provided to the Bennetts in the Modular Home Owner's Manual covers "[m]anufacturing defects reported to Skyline within 15 months after original delivery by an authorized dealer."  (Dkt. No. 11 at 5).  It specifically excludes "[m]isuse, unauthorized repairs or alterations, minor imperfections and dealer or owner improper transportation or setup."  Id.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANT
## SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

Skyline asserts that the Bennetts have not alleged any manufacturing defects covered by the express warranty. (Dkt. No. 11 at 6). In response, the Bennetts point to paragraph 26 of their complaint, which states that "[t]he nonconformities discovered by [the Bennetts] involved substandard, defective, and/or negligent manufacture, delivery, and installation." (Dkt. No. 1-2 at 14).

Other than this conclusory allegation, the Bennetts have failed to plead facts about the manufacture of their home that would be covered under the warranty. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan, 478 U.S. at 286. The Bennetts' naked allegation of negligence, without any facts to support it, is a legal conclusion.

The Bennetts alleged other facts in their complaint that implicate negligent installation or workmanship on the part of Bob's Quality Homes, but these are explicitly excluded under the terms of the express warranty. See, e.g., Dkt. No. 1-2 at 4 ("Defendant Dealer damaged the subject home and failed to properly install the home....").

The Bennetts' claim that Skyline has breached "additional" express warranties under W. Va. Code § 46A-6-102(8) likewise fails. (Dkt. No. 1-2 at 17). Section 46A-6-102(8) defines a "warranty" as

"express and implied warranties described and defined" in various code sections under the West Virginia Consumer Credit and Protection Act, including §§ 46-2-313, 314, and 315, as well as "expressions or actions of a merchant which assure the consumer that the goods have described qualities or will perform in a described manner."  W. Va. Code § 46A-6-102(8).

The portions of the UCC that are codified at §§ 46-2-313, 314, and 315 and cross-referenced by § 46A-6-102(8) as "express warranties" simply lead back to the original definition of an express warranty expounded in the UCC.  Any "affirmation of fact or promise made by the seller to the buyer which relates to the goods," "description of the goods," or "sample or model" that is part of the basis of the bargain forms an express warranty.  W. Va. Code § 46-2-313(1)(a)-(c).  Sections 314 and 315 refer to implied warranties, and are not relevant here.  Any "expressions or actions of a merchant" that may form the basis of an additional express warranty are not described in the complaint.

After this intellectual exercise, the Court is none the wiser as to the basis of any additional supposed "express warranties" provided by Skyline to the Bennetts, other than the one contained in the Modular Home Owner's Manual.  However, the Bennetts have

16

asked for leave to amend their complaint should the Court find it deficient. (Dkt. No. 17 at 1). The Bennetts have not amended their complaint yet, and the Court cannot see how an amendment to Count Three to explicitly allege the express warranties Skyline violated would be in bad faith, prejudice the defendants, or be futile. Therefore, it denies Skyline's motion to dismiss Count Three, and grants the Bennetts leave to amend Count Three.

**D)   Count Four: Breach of Implied Warranty of Merchantability**

The Bennetts claim that Skyline breached the implied warranty of merchantability contained in W. Va. Code §§ 46-2-314 and 46A-6-107. A warranty of merchantability is implied, unless excluded or modified, in every contract for sale "if the seller is a merchant with respect to goods of that kind." W. Va. Code § 46-2-314(1).

A merchant is defined, in relevant part, as a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction...." W. Va. Code § 46-2-104(1).

In order for goods to be merchantable, they "must be at least such as

> (a) pass without objection in the trade under the contract description; and

> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unity and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
> (f) conform to the promises or affirmations of fact made on the container or label if any."

W. Va. Code § 46-2-314(2)(a)-(f).

An implied warranty may also arise from a course of dealing or usage of trade. W. Va. Code § 46-2-314(3). A merchant is not permitted to "exclude, modify or otherwise attempt to limit" a warranty of merchantability. W. Va. Code § 46A-6-107.

In its answer, Skyline denied the paragraph of the Bennetts' complaint alleging that it is a merchant; however, it cannot and does not seriously argue that the Bennetts failed to allege that it was a merchant of mobile homes. (Dkt. No. 4 at 5). The Bennetts allege that Skyline is a manufacturer of mobile homes, including theirs, and that it sold and warranted mobile homes. (Dkt. No. 1-2 at 1-2). The Bennetts have alleged sufficient facts at this stage that Skyline is a merchant.

Skyline argues, however, that the Bennetts have failed to plausibly allege a factual basis for a cause of action for breach

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

of the implied warranty of merchantability. (Dkt. No. 11 at 6).

The Bennetts' complaint does state that their home was not fit for

occupancy, and that their use of the home was impaired. (Dkt. No.

1-2 at 14). That is all they state, however, and their restatement

of the elements of a breach of the implied warranty of

merchantability, without additional facts, is not cognizable. See,

e.g., Reed v. Pfizer, Inc., 839 F.Supp.2d 571, 578-79 (E.D.N.Y.

2012) (granting motion to dismiss as to plaintiffs' claims under

the West Virginia implied warranty of merchantability statute

because the plaintiffs' "unsupported conclusions" that the product

was not merchantable "lack the required factual content.").

As noted earlier, the Bennetts seek leave to amend any factual

deficiencies in their complaint, which, as to Count Four, is a

reasonable request. (Dkt. No. 17 at 1). Therefore, the Court

denies Skyline's motion to dismiss, and grants the Bennetts leave

to amend Count Four.

**E)   Count Five: Breach of Implied Warranty of Fitness**

The Bennetts claim that Skyline breached the implied warranty

of fitness contained in W. Va. Code §§ 46-2-315 and 46A-6-107.

(Dkt. No. 1-2 at 8-9). The buyer can rely on an implied warranty

of fitness for a particular purpose when the seller, at the time

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT**
**SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]**

the contract was formed, "has reason to know any particular purpose for which the goods are required, and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." W. Va. Code § 46-2-315. Whether this warranty arises is a question of fact.

Use of goods for "a particular purpose" within the meaning of § 46-2-315 "differs from the ordinary purpose for which the goods are used" and "envisages a specific use by the buyer which is peculiar to the nature of his business...." Commentary, W. Va. Code § 46-2-315. The ordinary purpose for which goods are used "are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." Id. A merchant cannot "[e]xclude, modify, or otherwise attempt to limit any warranty," including the warranty of fitness for a particular purpose." W. Va. Code § 46A-6-107.

Skyline argues that the Bennetts' claim for breach of implied warranty of fitness fails because they are unable to "point to any particular purpose for which the home was to be used, other than the ordinary purpose of being a dwelling." (Dkt. No. 11 at 7). The Bennetts allege that their home "was not fit for the particular purpose for which it was intended." (Dkt. No. 1-2 at 9). However,

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

as Skyline points out, the Bennetts have never stated what that particular purpose is, other than to be used as a dwelling. In response, the Bennetts state only that they informed Bob's Quality Homes of their need to occupy the house quickly; but they still intended to occupy the house for its ordinary purpose--as a dwelling. (Dkt. No. 17 at 12; Dkt. No. 1-2 at 3). "Without alleging a particular purpose for the mobile home other than as a dwelling, this claim lacks an essential element, and therefore cannot go forward." <u>Beattie v. Skyline Corp.</u>, 906 F.Supp.2d 528, 535 (S.D.W. Va. 2012). Here, the Bennetts' claim lacks an essential element, and the Court, therefore, grants Skyline's motion to dismiss Count Five.

**F)   Count Six: Breach of Contract and Duty of Good Faith**

The Bennetts claim that Skyline breached its contract and the duty of good faith contained in W. Va. Code § 46-1-203. Section 46-1-203 "does not support an independent cause of action for failure to perform or enforce in good faith." Commentary, W. Va. Code § 46-1-203. Rather, the failure to perform or enforce duties under a contract in good faith "constitutes a breach of that contract." <u>Id.</u> <u>See, e.g.</u>, <u>Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love</u>, 746 S.E.2d 568, 578 (W. Va. 2013).

21

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

The Bennetts argue that they have not asserted their breach of duty of good faith claim as a stand alone claim, but rather to illustrate " one way in which the subject contract was breached." (Dkt. No. 17 at 12). The Court must consider, then, whether the Bennetts have stated a claim for breach of contract, or a claim based solely on breach of the duty of good faith. <u>See</u> <u>Knisely v. Nat'l Better Living Ass'n, Inc.</u>, 2014 WL 4084517 at *15 (N.D.W. Va. Aug. 19, 2014).

To state a valid claim for breach of contract, a plaintiff must allege "'the breach on which the plaintiffs found their action...[and] the facts and circumstances which entitle them to damages.'" <u>Knisely</u>, 2014 WL 4084517 at *15 (quoting <u>Exec. Risk Indemn., Inc. v. Charleston Area Med. Ctr., Inc.</u>, 681 F.Supp.2d 694, 714 (S.D.W. Va. 2009)). A breach of contract claim has the following elements: "(1) 'the existence of a valid, enforceable contract;' (2) 'that the plaintiff has performed under the contract;' (3) 'that the defendant has breached or violated its duties or obligations under the contract; and' (4) 'that the plaintiff has been injured as a result.'" <u>Id.</u>

The Bennetts have adequately pleaded a breach of contract claim against Skyline. First, a valid, enforceable contract

existed.  The Bennetts entered into a purchase contract with Bob's Quality Homes for the new mobile home manufactured by Skyline. (Dkt. No. 1-2 at 3).  Although Skyline was not a party to that initial contract, Skyline undertook repairs on the damaged mobile home after the Bennetts complained.  <u>Id.</u> at 5.  Also, the Bennetts have alleged that an agency relationship exists between Skyline, the manufacturer, and Bob's Quality Homes, the dealer.  <u>Id.</u> at 2-3. If an agency relationship does exist, the contract obligations between Bob's Quality Homes and the Bennetts could be imputed to Skyline.

Second, the Bennetts performed under the contract.  The Bennetts contracted with Bob's Quality Homes to exchange money for a new mobile home.  The Bennetts' bank, Belpre, disbursed funds to Bob's Quality Homes, albeit allegedly against the Bennetts' explicit instructions.  (Dkt. No. 1-2 at 5).

Third, the Bennetts have sufficiently alleged Skyline's breach of the contract.  After the Bennetts performed their end of the bargain, Skyline undertook repairs, but "failed and/or refused to repair the home in a timely manner."  (Dkt. No. 1-2 at 5). Specifically, Skyline breached the express and implied warranties; refused to "properly deliver, install, and repair the new

manufactured home"; misrepresented both "the condition of the new manufactured home and...Defendants' qualifications and capabilities"; requested, disbursed, and received "loan funds prior to completion of the subject home and without [the Bennetts'] authorization"; and failed "to remedy the problems brought about by the Defendants' unlawful conduct in a timely fashion." Id. at 9.

Finally, the Bennetts have adequately pleaded injury. They allege that they were unable to move into their new home on time, discovered "repeated nonconformities" once they finally moved in, and, as a result, "suffered monetary loss, incidental, consequential, actual and compensatory damages, and emotional and mental distress, loss of use, aggravation, anxiety, annoyance and inconvenience." (Dkt. No. 1-2 at 6).

For the reasons discussed, the Court grants Skyline's motion to dismiss Count Six to the extent it alleges a stand alone cause of action for breach of the duty of good faith, but otherwise denies the motion to dismiss.

**G)  Count Seven: Unconscionability**

The Bennetts allege that, "[g]iven the condition of the subject home at the time of sale and delivery, the purchase price

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]**

charged, and paid, for the home was unconscionable as a matter of law." (Dkt. No. 1-2 at 10).

The court may refuse to enforce an agreement that is unconscionable at the time it was made, or appears to have been induced by unconscionable conduct. W. Va. Code § 46A-2-121(1)(a). Unconscionability is a question of law, and can generally be decided on summary judgment. <u>Hager v. American General Finance, Inc.</u>, 37 F.Supp.2d 778, 787 (S.D.W. Va. 1999). This does not mean, however, that the Court cannot address unconscionability on a motion to dismiss. <u>See, e.g.</u>, <u>Adkins v. CMH Homes Inc.</u>, 2014 WL 2112859 at *4-5 (S.D.W. Va. May 19, 2014); <u>Heavener v. Quicken Loans, Inc.</u>, 2013 WL 2444596 at *4-5 (N.D.W. Va. June 5, 2013). However, dismissal is improper if questions of fact exist as to "whether the parties' bargaining power was grossly unequal so as to render the transactions between the plaintiffs and defendants unconscionable." <u>Id.</u> <u>Herrod v. First Republic Mortg. Corp., Inc.</u>, 625 S.E.2d 373, 379-80 (W. Va. 2005).

Several factors play into the analysis when determining whether a transaction is unconscionable, including "the relative positions of the parties, the adequacy of the bargaining position, and the existence of meaningful alternatives available to the

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT**
**SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]**

plaintiffs." <u>Hager v. American General Finance, Inc.</u>, 37 F.Supp.2d 778, 786-87 (1999). "A bargain may be unconscionable if there is 'gross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party....'" <u>Id.</u> (citing <u>Troy Mining Corp. v. Itmann Coal Co.</u>, 176 W. Va. 599, 346 S.E.2d 749, 753 (1986)). "Gross inadequacy in bargaining power may exist where consumers are totally ignorant of the implications of what they are signing, or where the parties involved in the transaction include a national corporate lender on one side and unsophisticated, uneducated consumers on the other." <u>Id.</u> (internal citations omitted).

Skyline argues that the Bennetts "failed to allege any factual support for their legal conclusion that the purchase price paid for their home was unconscionable as a matter of law, or that the transaction documents were unconscionable." (Dkt. No. 11 at 8). After carefully reviewing the complaint, the Court agrees. The Bennetts rely on "the condition of the subject home at the time of sale and delivery," "the purchase price charged, and paid, for the home," and "the above-described transaction and transaction documents prepared by Defendants" to support their assertion that the transaction was unconscionable. (Dkt. No. 1-2 at 10). It is

helpful to note the distinction between procedural unconscionability, usually concerned with unfairness in the bargaining process and formation of the contract, and substantive unconscionability, which is concerned with fairness in the contract itself. See Adkins v. CMH Homes, Inc., 2014 WL 2112859 at *4-5 (N.D.W. Va. May 19, 2014). Here, the Bennetts have failed to allege facts to support a claim for either procedural or substantive unconscionability.

As to procedural unconscionability, the Bennetts state in Count Seven that "[t]he above-described transaction and transaction documents prepared by Defendants were unconscionable at the time they were made." (Dkt. No. 1-2 at 10). However, they fail to allege any facts concerning the transaction and transaction documents. On April 18, 2013, they signed a contract with Bob's Quality Home. Id. at 3. Their home purchase was accompanied by an express manufacturers' warranty that they understood to be part of the bargain. Id. at 3-4. Bob's Quality Homes allegedly made false representations about the quality and conditions of the home on which the Bennetts then relied when they purchased the home. Id. at 4. However, the Bennetts fail to allege any facts regarding a gross inequality of bargaining power, contract terms that

unreasonably favored the defendants, or any other suggestion that the bargaining and contract process was unconscionable. Given the lack of factual support for a claim of procedural unconscionability, the Court dismisses that claim, and turns next to whether the complaint includes an adequate claim for substantive unconscionability.

As to that issue, the Bennetts' claim likewise fails. They allege that their contract with Bob's Quality Homes included several express and implied warranties covering "any repairs or replacements needed during the warranty period." Id. at 4. Other than that, however, they include no contract terms. They only allege that the entire transaction was unconscionable because they "were in a disadvantaged position, not knowing what communications occurred between Defendants, and having no viable alternatives to secure housing for their family." (Dkt. No. 17 at 13).

The Court can infer from the complaint that the Bennetts had no viable housing alternative. However, this allegation, standing alone, is insufficient to sustain a claim for substantive unconscionability, which is concerned with the fairness of the contract itself. Here, the Bennetts merely allege that the

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

contract contained various warranties, later breached by the Defendants, and that they had no viable housing alternative.

The Court is mindful that, generally, disposal of unconscionability claims is improper if questions of fact exist as to "whether the parties' bargaining power was grossly unequal so as to render the transactions between the plaintiffs and defendants unconscionable." Hager, 37 F.Supp.2d at 787. The Bennetts, however, have failed to allege even the elements of the claim that would justify permitting the parties to proceed, and the Court therefore dismisses Count Seven.

**H) Count Eight: Common Law Negligence**

The Bennetts allege common law negligence. The Supreme Court of Appeals of West Virginia describes negligence as "the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstances of time, place, manner, or person." Dicken v. Liverpool Salt & Coal Co., 23 S.E. 582 (1895). Courts generally define negligence in terms of (1) whether the defendant owes a legal duty to the plaintiff; (2) whether the defendant breached that duty; (3) whether the defendant's breach actually and proximately caused the plaintiff's

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

injury; and, (4) whether the plaintiff suffered damages.  See, e.g., Marcus v. Staubs, 736 S.E.2d 360, 370-74 (W. Va. 2012).

Whether a defendant owes a duty to the plaintiff is a question of law to be decided by the Court, not a question of fact for the jury.  Marcus, 736 S.E.2d at 370.  Generally, tort liability "will not arise for breach of contract unless the action in tort would arise independent of the existence of the contract."  Beattie v. Skyline Corp., 906 F.Supp.2d 528, 543 (S.D.W. Va. 2012).

The Bennetts allege that Bob's Quality Homes owed them a duty "to adequately inspect the home site, to make accurate and appropriate recommendations about installation of the subject home at the site, and to deliver and install the home promptly, carefully, and in accordance with the sales agreement." (Dkt. No. 1-2 at 10).  Allegedly, Bob's Quality Homes breached this duty by damaging the home during delivery and installation.  Id.  The Bennetts also assert that Bob's Quality Homes and Skyline owed them a duty of care to perform the requested repairs on the home in "a good and workmanlike manner within a reasonable time period," and that they breached this duty by performing faulty repairs.  Id. at 11.

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

Skyline concedes that the Bennetts have "generically alleged their negligence claim sufficiently" for purposes of the motion to dismiss, but argues that those general negligence claims "are directed primarily to [Bob's Quality Homes] and [Belpre]." (Dkt. No. 11 at 9). The Bennetts respond that their allegations against Bob's Quality Homes also pertain to Skyline, because they have alleged that Bob's Quality Homes is Skyline's "authorized dealer and/or as an agent." (Dkt. No. 1-2 at 2-3; <u>see</u> Dkt. No. 17 at 13). They correctly point out that this relationship establishes the potential for joint and several liability (Dkt. No. 17 at 14; Dkt. No. 1-2 at 3). At the motion to dismiss stage, the Court finds that the Bennetts' negligence allegations are sufficient, and denies Skyline's motion to dismiss Count Eight.

I)    **Count Nine: Unfair or Deceptive Acts or Practices**

The Bennetts allege that Skyline committed acts that were <u>per se</u> unfair and deceptive in the sale, installation, financing, and repair of their new manufactured home. (Dkt. No. 1-2 at 11). They allege general, unspecified unfair or deceptive acts pursuant to W. Va. Code § 46A-6-104, as well as specifically enumerated instances of deceptive acts. <u>Id.</u>

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANT
## SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

Under the West Virginia Consumer Credit and Protection Act ("the WVCCPA"), a consumer who suffers a monetary loss as a result of an unfair or deceptive act may bring an action to recover damages. W. Va. Code § 46A-6-106(a). The elements of a cause of action under § 46A-6-106(a) include "unlawful conduct by the seller, an ascertainable loss on the part of the consumer, and a causal connection between the ascertainable loss and the conduct forming the basis of the lawsuit." Stanley v. Huntington Nat'l Bank, 2012 WL 254135 at *7 (N.D.W. Va. Jan. 27, 2012) (citing White v. Wyeth, 705 S.E.2d 828, 835 (W. Va. 2010)).

A consumer, however, cannot bring an action "until the consumer has informed the seller or lessor in writing and by certified mail of the alleged violation and provided the seller or lessor twenty days from receipt of the notice of violation to make a cure offer." W. Va. Code § 46A-7-106(b). See Stanley, 2012 WL 254135 at *7 ("This Court agrees that even if the plaintiff's claims fell within the purview of Section 46A-6-106(a), the plaintiff's failure to comply with the mandatory prerequisite set forth in Section 46A-6-106(b) bars her from bringing a claim.").

Skyline argues that the Bennetts have failed to meet the notice prerequisite, thus requiring dismissal of Count Nine. (Dkt.

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

No. 11 at 9). On May 9, 2014, the Bennetts sent a certified letter informing Skyline of their claims. (Dkt. No. 10-1). In that letter, they state that "they have several legitimate claims against [Skyline]–including probable violations of article six of the West Virginia Consumer Credit and Protection Act." Id. Although the May 9, 2014, letter was not included in the Bennetts' complaint,[1] the Court may consider it because "it was integral to and explicitly relied on in the complaint," and the plaintiffs do not challenge its authenticity. Phillips, 190 F.3d at 618.

Skyline points out that the Bennetts' letter mentioned neither a specific violation nor the twenty-day cure period. (Dkt. No. 11 at 10). However, the West Virginia legislature did not include specific requirements for the notice letter other than that it must provide notice of a violation of the WVCCPA. Case law in West Virginia is sparse on this point. It is clear, however, that courts will grant a defendant's motion to dismiss when the notice letter fails even to mention the WVCCPA. See Stanley v. Huntington Nat'l Bank, 492 Fed. Appx. 456, 461 (4th Cir. 2012) (unreported) (affirming the district court's dismissal of a plaintiff's WVCCPA

---

[1] In the interest of full disclosure, Skyline included the letter as am addendum to its motion to dismiss. Dkt. No. 10-1.

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

claim when the letter sent by the plaintiff did not assert a violation of the WVCCPA).

Skyline mentions numerous allegations in the Bennetts' complaint that bolster their WVCCPA claim. (<u>See</u> Dkt. No. 11 at 10-12 (representing that repairs would be performed properly when Skyline should have known it was not possible, and failing to promptly refund all moneys are among the allegation)). Nonetheless, it argues that the Bennetts do not assert these claims against Skyline, but rather, against Belpre and Bob's Quality Homes. <u>Id.</u> at 10. Skyline's argument disregards the Bennetts' allegation that Bob's Quality Homes is an authorized dealer and/or agent of Skyline. (Dkt. No. 1-2 at 2-3). For purposes of this motion to dismiss, the Bennetts' agency allegation makes these claims plausible against Skyline. The specific allegations in the Bennetts' complaint, coupled with the May 9, 2014, letter, are sufficient to defeat Skyline's motion to dismiss Count Nine.

In the alternative, Skyline asserts that the Court should grant its motion to dismiss because the WVCCPA does not apply to an Ohio sales transaction to purchase a modular home built in Ohio and financed by an Ohio mortgage lender. (Dkt. No. 11 at 12). In support of its argument, Skyline cites <u>Joy v. Chessie Employees</u>

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

Fed. Credit Union, 411 S.E.2d 261, 265 (W. Va. 1991).  There, the Supreme Court of Appeals of West Virginia refused to apply the WVCCPA to a Maryland loan agreement, contracted for with a Maryland credit union, secured by West Virginia real property.  There, the West Virginia resident used the loan proceeds to finance a business.  Joy, 411 S.E.2d at 265.

The facts in Joy differ from those in the instant case in at least one important respect, however.  Here, two West Virginia residents secured an Ohio loan with West Virginia property in order to improve their West Virginia property.  In Joy, the Supreme Court of Appeals of West Virginia noted as significant the fact that "the money from the loan was used to finance a business–not to improve the real property."  411 S.E.2d at 265.  The Bennetts' contract was to deliver and install a home in West Virginia.  Therefore, the Court declines to dismiss Count Nine on this alternate ground.

**J)    Count Ten: Common Law Fraud and Misrepresentation**

The Bennetts claim that Bob's Quality Homes misrepresented the quality and condition of the home, and their qualifications to deliver and install the home properly and promptly.  (Dkt. No. 1-2 at 13).  In addition, they claim that Belpre falsely promised to protect their interest, and to disburse loan funds only upon Bob's

35

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

Quality Homes' completion of the home installation. Id. The Bennetts state that they justifiably relied upon the defendants' representations when deciding to purchase their home, and that they were damaged by the misrepresentations. Id. at 13-14.

The elements of a cause of action for fraud include: "'(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.'" Cordial v. Ernst & Young, Syl. Pt. 3, 483 S.E.2d 248, 259 (W. Va. 1996) (quoting Lengyel v. Lint, Syl. Pt. 1, 280 S.E.2d 66 (W. Va. 1981), and Muzelak v. King Chevrolet, Inc., Syl. Pt. 2, 368 S.E.2d 737 (1927)).

Under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud or mistake." The circumstances that must be pleaded with particularity include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th

Cir. 1999). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b).

Skyline argues, and the Court agrees, that the Bennetts' complaint is almost completely devoid of facts regarding the "time, place, and contents" of the alleged fraud and misrepresentations. The Bennetts merely state that Bob's Quality Homes guaranteed to deliver and install the home within the Bennetts' desired time frame, and that Bob's Quality Homes further represented its qualifications and capabilities to deliver and install the home. (Dkt. No. 1-2 at 3). Later on in the complaint, the Bennetts do plead that Bob's Quality Homes' representations were false, but they fail to state any detail surrounding the misrepresentations. Id. at 4. The Bennetts freely admit that "without discovery," they "are unable to state any more details" about the alleged misrepresentations, and seek leave to amend their pleading if their allegations in Count Ten are deficient. (Dkt. No. 17 at 15-16).

"The standard set forth by Rule 9(b) aims to provide defendants with fair notice of claims against them and...prevent fraud actions in which all the facts are learned only following discovery...." McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 560 (4th Cir. 2013). Thus, in the Court's view, it would be

futile to grant the Bennetts' motion to amend in the face of their admission that they cannot state any more facts at this stage. Therefore, it denies the Bennetts' request for leave to amend the complaint and grants Skyline's motion to dismiss Count Ten.

**K)   Count Eleven:  Civil Conspiracy**

The Bennetts claim that Skyline, Bob's Quality Homes, and Belpre were engaged in a civil conspiracy. (Dkt. No 1-2 at 14). West Virginia recognizes a cause of action for civil conspiracy, Kessel v. Leavitt, 511 S.E.2d 720, 753 (W. Va. 1998), which is defined as "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Dunn v. Rockwell, 689 S.E.2d 255, 268 (W. Va. 2009) (quoting Dixon v. American Indus. Leasing Co., 253 S.E.2d 150, 152 (W. Va. 1979)).

Importantly, "[t]he cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Id. Thus, civil conspiracy is not a stand alone cause of action, but is "a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Id. at 269.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANT
## SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

Courts have granted summary judgment or dismissal as to claims of civil conspiracy when there is no underlying tort to support the claim. See, e.g., Long v. M&M Transp., LLC, __ F.Supp.2d ___, 2014 WL 4388337 at *13 (N.D.W. Va. Sept. 5, 2014). In addition, the court should grant a motion to dismiss a civil conspiracy charge when the plaintiffs claim that the defendants "engaged in a civil conspiracy" and "individually and collectively" committed wrongs, but fail to allege facts to support that allegation. Tucker v. Thomas, 853 F.Supp.2d 576, 594 (N.D.W. Va. 2012).

The Bennetts do not allege a specific tort underlying the civil conspiracy charge in Count Eleven, and the Court has dismissed their common law fraud and misrepresentation claim in Count Ten. The only other tort claim remaining is the common law negligence claim in Count Eight. (Dkt. No. 1-2 at 14, 10-11). By its very definition, however, a civil conspiracy claim does not sound in negligence. See generally 15A C.J.S. Conspiracy § 4 (2014). Civil conspiracy consists of two or more people who engage in concerted action to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. Dunn, 689 S.E.2d at 268.

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

In <u>Mallamo v. Town of Rivesville</u>, the Supreme Court of Appeals of West Virginia noted the distinction between negligence and an intentional tort for purposes of a civil conspiracy action. 477 S.E.2d 525, 534 (W. Va. 1996). There, a plaintiff brought both a negligence and a civil conspiracy claim against the town of Rivesville after he was shot by a Marion County deputy executing an arrest warrant. <u>Id.</u> at 527-29. By statute, political subdivisions like Rivesville are "liable for injury or loss to persons 'caused by the *negligent* performance of acts by their employees while acting within the scope of employment.'" <u>Id.</u> at 534 (quoting W. Va. Code § 29-12A-4(c)(2) (1986)) (emphasis in original). The Court found, however, that "conspiracy is an intentional act, and not a negligent one," immunizing Rivesville from the civil conspiracy charge. <u>Id.</u>

The Bennetts must also plead sufficient factual support for the existence of the conspiracy. The Bennetts' complaint includes a general allegation that "each Defendant was the principal, agent or employee of each other Defendant," but this is a legal conclusion, not a factual allegation.[2] <u>Id.</u> at 3. This allegation

---

[2]   This allegation differs in kind from the Bennetts' allegation that Bob's Quality Homes is an "authorized Skyline dealer and/or as an agent" of Skyline (Dkt. No. 1-2 at 2). That is

is insufficient to show the existence of "a combination of two or more persons...to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Dunn, 689 S.E.2d at 268. The Bennetts also allege that "an undisclosed personal and/or business relationship" exists between Belpre and Bob's Quality Homes. (Dkt. No. 1-2 at 5). This is the closest the Bennetts come to alleging facts to support the existence of the civil conspiracy, and it is not close enough.

Although the Bennetts seek leave to amend their complaint, their civil conspiracy claim fails as a matter of law because the only intentional tort claim pleaded, Count Ten, has been dismissed. Therefore, the Court grants Skyline's motion to dismiss Count Eleven.

**L)   Count Twelve:  Joint Venture**

The Bennetts' final claim is that Skyline was engaged in a joint venture with Belpre and Bob's Quality Homes to sell manufactured homes to West Virginia consumers. (Dkt. No. 1-2 at 14). A joint venture is "an association of two or more persons to carry out a single business enterprise for profit, for which

_____

a factual allegation, taken as true for the purposes of a motion to dismiss, and is sufficient to allege an agency relationship between Bob's Quality Homes and Skyline.

41

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT
SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

purpose they combine their property, money, effects, skill, and knowledge." Armor v. Lantz, Syl. Pt. 5, 535 S.E.2d 737, 742 (W. Va. 2000) (citing Price v. Halstead, Syl. Pt. 2, 355 S.E.2d 380 (1987)). A joint venture generally arises out of a contractual relationship. Id. Members of a joint venture are jointly and severally liable for the obligations arising out of the venture, and actions of the joint venture bind individual venturers. Id. at 743.

The distinguishing characteristics of a joint venture were outlined by the Supreme Court of Appeals of West Virginia in Pownall v. Cearfoss, 40 S.E.2d 886, 893-94 (W. Va. 1946). Although an exact definition does not exist, "a contract, written or verbal, is essential to create the relation of joint adventurers." Id. at 893. In addition, the joint venturers "must combine their property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature...." Id. A profit-sharing agreement, whether express or implied, is also essential to create a joint venture. Id. An agreement to share losses is not essential, especially "if the nature of the undertaking is such that no losses...are likely to occur." Id. at 894.

## MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT
### SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]

Even if the Bennetts had alleged sufficient facts to plead a joint venture claim, which is unlikely, their claim fails. They allege that Skyline, Bob's Quality Homes, and Belpre are engaged in a joint venture to sell manufactured homes in West Virginia. (Dkt. No. 1-2 at 14). They have failed to allege, however, why that supposed joint venture relationship, if it does exist, is illegal or tortious.

The Bennetts are required to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft</u>, 556 U.S. at 678. This requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Here, the Bennetts have not alleged any misconduct, thus failing to nudge their claims "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. As a result, the Court dismisses Count Twelve.

### IV) CONCLUSION

For the reasons discussed, the Court **DENIES** in part Skyline's motion to dismiss as to Counts One, Two, Three, Four, Six, Eight, and Nine; **GRANTS** in part Skyline's motion to dismiss as to Count Six insofar as it purports to state a stand alone claim for breach of the duty of good faith, and as to Counts Five, Seven, Ten,

43

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANT**
**SKYLINE'S MOTION TO DISMISS [Dkt. No. 10]**

Eleven, and Twelve, and dismisses those counts without prejudice;

and, **GRANTS** the Bennetts' motion for leave to amend Counts Three

and Four.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this order

to counsel or record.

DATED: October 3, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE