IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GABRIEL BENNETT and TIFFANY BENNETT,**

    **Plaintiffs,**

**v.**     //     CIVIL ACTION NO. 1:14CV129
                                  (Judge Keeley)

**SKYLINE CORPORATION, BOB'S QUALITY HOMES, INC., and BELPRE SAVINGS BANK,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

Pending before the Court is the motion to dismiss the amended complaint filed by the defendant, Skyline Corporation ("Skyline") (Dkt. No. 35). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Skyline's motion to dismiss Counts Three and Four of the amended complaint filed by the plaintiffs, Gabriel and Tiffany Bennett ("the Bennetts").

### I.   FACTUAL BACKGROUND

**A.   Factual Background**

The Court has construed the following facts in the light most favorable to the Bennetts, the non-movants. Papasan v. Allain, 478 U.S. 265, 286 (1986). Skyline is an Indiana corporation that manufactures home components. Home builders such as co-defendant Bob's Quality Homes, Inc. ("Bob's Quality Homes") purchase

**BENNETT v. SKYLINE CORPORATION** 1:14CV129

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

manufactured home components from Skyline, and then build a home from those components for purchasers. Skyline provides an express warranty guaranteeing that its home components are free from manufacturing defects.

When the Bennetts purchased a new home from Bob's Quality Homes on April 18, 2013, Bob's Quality Homes represented itself as an authorized Skyline dealer/agent. In order to pay for their new home, the Bennetts entered into a loan agreement with co-defendant Belpre Savings Bank ("Belpre").

At the time they purchased their home, the Bennetts informed Bob's Quality Homes that they needed to have it delivered and ready for occupancy by a certain date. Despite guaranteeing that it would deliver and install the home on time, Bob's Quality Homes failed to complete the installation on time.

The Bennetts contend that Bob's Quality Homes damaged and failed to properly install their home so that, when they finally were able to occupy their home, they found nonconformities stemming from the manufacture, delivery, and installation of the home. They contend that these nonconformities have substantially impaired their enjoyment of their new home.

**BENNETT v. SKYLINE CORPORATION**                              1:14CV129

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

After discovering the nonconformities, the Bennetts contacted both Bob's Quality Homes and Skyline, demanding that they undertake repairs pursuant to any and all applicable warranties. Bob's Quality Homes and Skyline, however, failed to repair the home in a timely fashion. Consequently, the Bennetts notified Bob's Quality Homes, Skyline, and Belpre of their rejection/revocation of acceptance of the home.

**B.   Procedural Background**

After the Bennetts filed their lawsuit in the Circuit Court of Calhoun County, West Virginia (Dkt. No. 1 at 1), Skyline, with the consent of Bob's Quality Homes and Belpre, removed the case to this Court (Dkt. No. 1), alleging original jurisdiction under 28 U.S.C. § 1332(a) based on diversity of citizenship (Dkt. No. 1 at 2). The Bennetts are citizens of West Virginia and reside in Calhoun County, West Virginia. Bob's Quality Homes is an Ohio corporation with its principal place of business in Ohio. Belpre also is an Ohio corporation with its principal place of business in Ohio. Skyline is an Indiana corporation with its principal place of business in Indiana. Id. The price of the modular home components used to construct the Bennetts' home, standing alone, well exceeds the jurisdictional threshold of $75,000.00. Id. at 3.

3

**BENNETT v. SKYLINE CORPORATION**                                    **1:14CV129**

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]

Following removal, Skyline moved to dismiss the Bennetts' complaint for failure to state a claim upon which relief can be granted. The Bennetts opposed Skyline's motion to dismiss, and also sought leave to amend their complaint to correct any deficiencies (Dkt. No. 17). In a Memorandum Opinion and Order entered on October 3, 2014, the Court granted Skyline's motion to dismiss Count Six insofar as it purported to state a stand alone claim for breach of the duty of good faith, and also dismissed Counts Five, Seven, Ten, Eleven, and Twelve (Dkt. No. 21 at 43-44). It denied Skyline's motion to dismiss Counts One, Two, Three, Four, Six, Eight, and Nine. Id. In addition, it granted the Bennetts leave to amend Counts Three and Four. Id.

Thereafter, the Bennetts filed an amended complaint, alleging seven counts against Skyline (Dkt. No. 29). In their renewed motion to dismiss Counts Three and Four of the amended complaint, Skyline argues that the Bennetts have failed to cure the deficiencies noted by the Court in its previous Memorandum Opinion and Order (Dkt. No. 35). The motion is fully briefed and ripe for disposition.

**BENNETT v. SKYLINE CORPORATION**                                1:14CV129

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

## II. LEGAL STANDARD

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). While a complaint does not need detailed factual allegations, however, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. at 286.

In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.

**BENNETT v. SKYLINE CORPORATION**                               1:14CV129

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

### III. ANALYSIS

**A.  Count Three**

Count Three of the amended complaint alleges that Skyline expressly warranted that the home purchased by the Bennetts would be free from defects, not be damaged, and be properly installed (Dkt. No. 29 at 8). Count Three also asserts that Skyline expressly warranted that it would fix any defects within the warranty period, and that the Bennetts' home would be "delivered with the options, fixtures, and components" they had selected, as represented by Skyline's models in their advertisements. Id. Finally, Count Three alleges that Skyline assumed "the express warranty obligations" of Bob's Quality Homes after it allegedly breached its own express warranty. Id. at 9. As a result of Skyline's alleged breaches, the Bennetts contend that their home "is defective, remodeled, retrofitted, and repaired in such a way that it could not be considered 'new' and could not be valued as highly as the 'new' home anticipated" at the time of purchase. Id.

In its motion, Skyline argues that the Bennetts "dressed up their allegations but did not 'explicitly allege the express

**BENNETT v. SKYLINE CORPORATION**                                          **1:14CV129**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

warranties violated' by Skyline, especially considering the content, nature and exclusions" in its express warranty (Dkt. No. 36 at 3). Specifically, Skyline denies that it provided the Bennetts with an express warranty that their home "would be delivered with the [selected] options, fixtures, and components," but that, in any case, such a claim properly relates to Count Five of the Bennetts' amended complaint, which alleges a breach of contract claim. Id.

Skyline also contends that, even if it did assume the express warranties extended by Bob's Quality Homes, the Bennetts failed to explicitly allege the content of those express warranties. Id. Finally, it argues that the Bennetts cannot use parol evidence, even if alleged with specificity, to contradict the express terms of its warranty. Id.

In their response to these arguments, the Bennetts contend that they have provided "adequate information" about the nature of their problems, and have fully described "the express warranties made and assumed by Skyline *in addition to* the written warranty already of record in this case." (Dkt. No. 40 at 2) (emphasis in original). Specifically, they "intended to purchase a custom-ordered home with specific bargained-for options . . . but that is

7

**BENNETT v. SKYLINE CORPORATION**                               1:14CV129

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

not what they ultimately received." Id. at 3. The Bennetts assert that, when they ordered their home, Skyline made the warranties defined in W. Va. Code § 46A-6-102(8), in addition to the express warranty noted by Skyline. Id. For its part, Skyline contends that the Bennetts have provided "no factual support for their claim that other express warranties were made," and argues that it performed more warranty service than was legally required (Dkt. No. 41 at 1-2).

In its earlier Memorandum Opinion and Order, the Court noted that, in Count Three of their original complaint, the Bennetts had provided only a conclusory allegation that "[t]he nonconformities discovered by [them] involved substandard, defective, and/or negligent manufacture, delivery, and installation," which it found to be insufficient as a matter of law (Dkt. No. 21 at 15). In granting them leave to amend, the Court ordered the Bennetts to specify any "additional" express warranties implicated by W. Va. Code § 46A-6-102(8). Id. at 16.

The Bennetts have remedied many of these deficiencies in their amended complaint (Dkt. No. 29 at 8). First, they include a specific allegation that Skyline warranted that their home "would be delivered with the options, fixtures and components" they had

8

**BENNETT v. SKYLINE CORPORATION**                              **1:14CV129**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

selected or that were represented by Skyline's "models, advertisements, and specifications." Id. They also allege that Skyline warranted that it would repair any manufacturing defects reported within the warranty period. Id. Unlike the claims in the original complaint, these allegations fall squarely within the express warranty contained in Skyline's Modular Home Owner's Manual, which states that "[m]anufacturing defects reported to Skyline within 15 months after original delivery by an authorized dealer will be corrected on site, without charge, and within reasonable time." (Dkt. No. 11 at 5). Although "[m]isuse, unauthorized repairs or alterations, minor imperfections and dealer or owner improper transportation or setup are excluded," Skyline's express warranty also states that the Bennetts "may have other rights which vary from state to state." Id. In West Virginia, a merchant's "description of the goods" or "sample or model" that forms part of the basis of the bargain are valid express warranties. W. Va. Code § 46-2-313(1)(a)-(c).

Unlike the mere conclusory allegations in the original complaint, the claims in Count Three of the amended complaint are factual allegations that the Court is required to accept as true at the motion to dismiss stage of the litigation. Papasan, 478 U.S.

9

**BENNETT v. SKYLINE CORPORATION**                              **1:14CV129**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

at 286. For that reason, the Court **DENIES** Skyline's Motion to Dismiss Count Three as inadequately pleaded.

Skyline's next argument, that the parol evidence rule precludes part of the Bennetts' claim in Count Three, is similarly unavailing. The Bennetts allege that Skyline "assumed the express warranty obligations regarding the installation of the subject home which were originally the warranty obligations of [Bob's Quality Homes], after [it] breached its express warranties." (Dkt. No. 29 at 9). The parol evidence rule prohibits evidence of <u>prior</u> agreements "that would vary or supplement the terms of an unambiguous contract." <u>Trenton Energy, LLC v. EQT Production Co.</u>, 2011 WL 3321479 at *3 (S.D.W. Va. Aug. 2, 2011) (emphasis added) (quoting <u>Wood Cnty. Airport Auth. v. Crown Airways, Inc.</u>, 919 F.Supp. 960, 965 (S.D.W. Va. 1996) and Restatement (Second) of Contracts § 213(2)). Count Three of the amended complaint, however, supports a reasonable inference that Skyline assumed the warranty obligations of Bob's Quality Homes after the Bennetts purchased the home, and, therefore, <u>after</u> the parties had entered into the contract giving rise to the express warranty (Dkt. No. 29 at 9). The parol evidence rule does not preclude evidence of agreements between the parties that arose subsequent to the written

**BENNETT v. SKYLINE CORPORATION**                                1:14CV129

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

contract, such as those alleged by the Bennetts. See Syl. Pt. 3, Iafolla v. Douglas Pocahontas Coal Corp., 250 S.E.2d 128 (W. Va. 1978). Therefore, the Court also **DENIES** Skyline's motion to dismiss Count Three of the amended complaint based on the parol evidence rule.

**B.  Count Four**

In Count Four of their amended complaint, the Bennetts allege that Skyline breached the implied warranty of merchantability contained in W. Va. Code §§ 46-2-314 and 46A-6-107 because their home "was not in merchantable condition when sold to [them], or within a reasonable time thereafter, and was not fit for the ordinary purpose for which a home is used," resulting in damages (Dkt. No. 29 at 10). The Bennetts also contend that their home was not installed in accordance with Skyline's specifications and "the applicable regulatory requirements." Id.

Skyline argues that the Bennetts' additional allegations in the amended complaint are still insufficient to assert a cognizable claim for breach of the implied warranty of merchantability. It first asserts that any delay in their occupancy was caused by Bob's Quality Homes. It also contends that Skyline "went above and beyond its obligations" to get the Bennetts into their home.

11

**BENNETT v. SKYLINE CORPORATION**                                   **1:14CV129**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

Finally, it argues that the Bennetts' allegations, if true, establish that their damages are excluded by Skyline's express warranty (Dkt. No. 36 at 4-5). Skyline reiterates that the Bennetts' amended complaint has not alleged more than "the 'unsupported conclusions' which this Court found did not support their breach of warranties causes of action." (Dkt. No. 41 at 2).

In response, the Bennetts argue that, as laypeople, they are unable to specifically identify whether the "defects" they have identified in their home are "manufacturing defects" covered by Skyline's warranty, "or the result of some installation error" excluded by the warranty (Dkt. No. 40 at 2). "Even with regard to the implied warranty of merchantability, experts are necessary to specifically identify 'defects' because it involves an experienced examination of whether the home conforms 'in all material respects to applicable state and federal statutes and regulations establishing standards of quality and safety of goods.'" Id. (quoting W. Va. Code § 46A-6-102(4)).

Count Four includes the following new allegations, first, that their home, when delivered, was "unreasonably delayed," which caused them to suffer damages from delayed occupancy; second, that their home was not installed in accordance with Skyline's

**BENNETT v. SKYLINE CORPORATION**                                1:14CV129

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

specifications and applicable regulatory requirements (Dkt. No. 29 at 9-10). Neither of these allegations, however, supports the Bennetts' claim that their home was not merchantable, as required by W. Va. Code § 46-2-314(2)(a)-(f). See Dkt. No. 21 at 17-18. At bottom, what the Bennetts still allege is that their home was unfit for occupancy, and that their use of the home was impaired and delayed. The Court has previously found these allegations to lack the factual content regarding merchantability necessary to survive a motion to dismiss (Dkt. No. 21 at 19). Therefore, the Court **GRANTS** Skyline's renewed motion to dismiss Count Four of the Bennetts' amended complaint.

## IV. CONCLUSION

For the reasons discussed, the Court **GRANTS** Skyline's motion to dismiss Count Four of the amended complaint, and **DENIES** its motion to dismiss Count Three of the amended complaint (Dkt. No. 35).

It is so **ORDERED**.

**BENNETT v. SKYLINE CORPORATION** 1:14CV129

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT SKYLINE'S MOTION TO DISMISS [DKT. NO. 35]**

The Court directs the Clerk to transmit copies of this order to counsel of record.

DATED: April 10, 2015.

>    /s/ Irene M. Keeley
>    IRENE M. KEELEY
>    UNITED STATES DISTRICT JUDGE